**In re KUHN et al.**

**Patent Appeal No. 5007.**

Court of Customs and Patent Appeals.

May 29, 1945.

Frank H. Hubbard, of Milwaukee, Wis. (Edwin R. Hutchinson, of Washington, D. C., and William C. Lyon, of Milwaukee, Wis., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner in rejecting, in view of the prior art, all of the claims in appellants' application for a patent. The alleged invention relates to expansible wafers and has among its objects to provide a wafer which alone constitutes a thermal responsive unit.

Of the appealed claims, Nos. 13, 15, 18, 20, 21, and 22 are for the device and 8 and 9 are for the method of making it.

Claims 8, 15, and 18 are illustrative and read as follows:

"8. The method of forming a self-contained thermal responsive wafer having therein volatile liquid which comprises introducing a small quantity of volatile liquid by capillary action between two disks each formed of a single piece of sheet metal solid throughout the flexing area thereof and normally contiguous throughout such area and then uniting said disks peripherally to render the assembly vapor tight.

"15. A self-contained thermal responsive wafer containing a volatile liquid and comprising two metal disks of like thickness of metal, which disks are drawn to like forms and together for assembly in substantially liquid tight relation, each consisting of a single piece of sheet metal solid but flexible from its center to its margin, and said disks being marginally welded with their opposing flexible faces normally contiguous throughout to a degree obtainable only under substantial pressure thereby to restrict to a very thin and air-free film the liquid between said faces.

"18. In combination, relatively movable parts and a self-contained thermal responsive wafer to effect relative movement of said parts, said wafer containing a volatile liquid and comprising sheet metal disks substantially alike and of like thickness of metal, each being solid and flexible from its center to its margin and said disks being marginally welded with their opposing flexible faces contiguous throughout, thereby to restrict to a very thin and air-free film the liquid between said faces, said wafer being supported by and between bearings on said relatively movable parts, which bearings engage said wafer centrally on opposite sides."

The references cited are: Barnett et al., (British), 10,100, June 18, 1903; British patent, 101,256, Aug. 31, 1916; Halsey, 1,075,899, Sep. 33, 1913; Wingfield, 1,527,102, Feb. 17, 1925; Persons, 2,180,018, Nov. 14, 1939; Persons, 2,203,841, June 11, 1940; Leonard et al., 2,206,905, July 9, 1940.

The patent to Halsey relates to a volatile liquid thermostat, and omitting all references to drawings, the pertinent parts, insofar as the case at bar is concerned, read as follows:

"The object * * * is to increase the sensibility, smooth and uniform travel of the diaphragm and to simplify manufacture.

"* * * the thermostat consists of two dished flanged corrugated metal disks, the concave disk, forms the flexible diaphragm, pressed from thin tinned sheet steel which corresponds in form to the thicker and rigid front plate. The dia-

phragm plate is inserted within the flange of and against the front plate, and soldered about the periphery, thus forming a hermetically sealed expansion chamber entirely of steel or iron, the interior surface of which may be either tinned or bare. * * *

* * * * *

"A small and definite quantity of a suitable liquid having its boiling point under atmospheric pressure at approximately 66 degrees Fahrenheit, is sealed between the diaphragm and front plate, being just sufficient in quantity to distend the diaphragm to its safe limit of travel when said liquid is fully volatilized. When the liquid is condensed the flexible diaphragm collapses snugly against the front plate, leaving a thin film of liquid between, all air being carefully excluded. * * *"

In his specification, Wingfield describes his invention, so far as pertinent to the issue in this case, as follows:

"My invention relates to steam traps having a valve that is actuated by the expansion and contraction of a capsule containing a volatile liquid, * * *

"A steam trap capsule in accordance with my invention consists essentially of a rigid circular plate or disc corrugated on one side or face, a diaphragm or elastic plate spun or pressed over the corrugated side of the rigid plate and hard or silver-soldered or welded to the rigid plate simultaneously with a filling tube, the diaphragm being spun into the corrugations of the back plate after the hard soldering or welding operation to reestablish its elasticity. The diaphragm carries the valve or the valve holder and the rigid back plate is provided with means for suspending the capsule.

* * * * *

" * * * When the diaphragm is corrugated the chamber between it and the plate 1 is evacuated and liquid is sucked into it through the capillary tube which is then closed at its end by hard-soldering or welding and embedded in its groove 12. * * *"

The Persons patent, No. 2,180,018, relates to a thermostatically operated switch. Omitting references to drawings, we quote from the specification:

"It is an object * * * of the invention to provide means for transmitting the extremely small motion of a thermal element into the relatively greater motion of switch elements or the like.

"The invention further comprehends means for adjusting the thermal elements so that the switch will operate at different temperatures.

* * * * *

"A pair of diaphragms are secured together at their peripheries, and normally they are contiguous throughout substantially all of their faces. [One] diaphragm is secured to [a] tubular stud and is in communication with the bore therethrough. By this means, the fluid transmitted by the tube from [a] suitable bulb acts to separate [one] diaphragm from the [other] diaphragm * * *. Preferably, the fluid * * * fills the entire space therein so that no air is present in the system. However, when the fluid is cold, the diaphragms are contiguous * * * and separate only when the fluid is heated. The fluid may comprise a suitable liquid."

The patent to Persons, No. 2,203,841 relates to a thermostat comprising two corrugated members which are stamped together so as to insure that they will interfit and permit the two members to be contiguous throughout. Any space that may exist between the two members is adopted to be completely filled with some thermally-responsive material, preferably of the liquid type.

The patent to Leonard et al. relates to the valve art. The specification describes "a thermostatic element, whereby the thermostatic element 31, which is formed of thin flexible metal and contains an expansible fluid, may be retained between the two heads, the thermostatic element 31 being shaped at its central portion so as to snugly fit within the concave heads 18 and 28."

The Barnett et al. patent relates to a thermostat to automatically control the degree of heat to be used as a circuit closer in green-houses, incubaters or as a fire alarm. The device has two corrugated disks made of thin brass, the corrugations of one disk fitting into the other so that there is comparatively small space between them. The disks are soldered or brazed together leaving only a small part unjoined to enable the space between the disks to be filled with other or with methylated spirit or both. After filling, the space between the disks is hermetically sealed.

The British patent, No. 101,256, so far as pertinent, reads as follows:

"This invention relates to improvements in steam traps of the class operated by the expansion and contraction of a hermetically sealed capsule or chamber containing a volatile liquid and its vapour.

*      *      *      *      *

" * * * the capsules or the like are made of steel and are hermetically sealed by welding, preferably electric welding. * * *"

The foregoing references disclose that the device and the method of manufacture as described in appellants' application are old in the art and quite common. It is important therefore to examine appellants' arguments to learn just what they claim they did that was neither done nor suggested by those to whom patents have been previously granted.

"What appellants did," and we quote from their brief, "was to stamp and form the two disks together in nested relation for *likeness and intimate contact* of the disks to limit the liquid fill *to a minute quantity. They taught filling by capillary action,* as by placing the nested disks in a container to be progressively evacuated and filled with a volatile liquid. They taught filling as a step to be taken prior to uniting the disks peripherally. They taught sealing of the wafer by welding together the peripheral flanges of the two disks while maintaining the disks in intimate relation thus to provide for return of the disks to intimate relation following expansion of the wafer." (Italics not ours.)

It will be noted that both the British references show a sealed wafer comprising two flexible disks confining a volatile liquid, while Leonard et al. and the Persons references show the use of expansible liquid which accomplishes the same purpose as the volatile liquid employed in the device disclosed by appellants.

Claims 8 and 9, drawn to method, were rejected by the Primary Examiner as being substantially met by the patent to Halsey and as lacking invention over Barnett et al. in view of the patent to Persons, No. 2,203,841. The aforesaid claims, as well as the remainder of the appealed claims, were adequately examined and passed upon in the decision of the Board of Appeals, which, so far as pertinent, reads as follows:

"Claims 8 and 9, which are drawn to the method, stand rejected as being * * * substantially met by the patent to Halsey, and as lacking invention over Fig. 2 of Barnett in view of the Persons patent 2,-203,841. * * * With respect to the rejection on the patent to Halsey, while the patentee does not state the manner in which the liquid is introduced between the plates or introduction of the volatile liquid while the flexing portions are normally contiguous, Wingfield does show the idea of introducing a volatile liquid by capillary action through a capillary tube, after which the device is sealed.

"With respect to the rejection on Barnett and Persons, the Examiner states that the provision of closely interfitting corrugated metal disks with upstanding flanges as well as a closely interfitting relation by forming them together as suggested by Persons, would appear to involve no more than skill in the art and produce no new result. In this connection, it is noted that Persons discloses his corrugations as being stamped together so as to insure that they will interfit and permit the two members to be contiguous throughout.

"In view of the prior art referred to above, and for the reasons stated and discussed by the Examiner, we consider that claims 8 and 9 do not define a patentable invention over such art.

"Claims 13 and 15 recite the close together relation of the disks and these claims stand rejected as being unpatentable over Halsey on the ground that the disks of this patent are so arranged with respect to each other that they must be separated by the minute amount necessary to accomodate [Sic] the liquid therebetween. Halsey states that he uses a small and definite quantity of suitable liquid which is just sufficient in quantity to distend the diaphragm to its safe limit of travel when said liquid is fully volatilized. It is stated further that when the liquid is condensed the flexible diaphragm collapses snugly against the front plate F leaving a thin film of liquid between, all air being carefully excluded. With respect to the limitation that the opposing flexible faces of the disks are normally contiguous throughout to a degree obtainable only under substantial pressure, the Examiner refers to the patent to Persons 2,203,841 as showing it to be old in the art to form two nested

disks by stamping when closely interfitting disks are required.

"Appellants argue that Halsey does not show a film of vaporizable liquid of a thickness not greater than that possible with the disks, prior to sealing, pressed together under high pressure. We have carefully considered this rejection in the light of appellants' arguments in his [Sic] brief and it is our conclusion that these claims were properly rejected, since whatever difference in film thickness of the liquid there may be between appellants' device and that of the references is not critical, but would amount, at most, to a matter of degree.

"Claim 18 defines the relatively movable parts to be actuated by the wafer and bearings for the wafer centrally engaging the wafer on opposite sides. With respect to this limitation, the Examiner refers to the Persons patent 2,180,018 as showing that a wafer mounting of this type is common practice. The Wingfield patent is also referred to in this connection. We agree with the Examiner that there is no invention in the type of bearings called for in this claim, and we likewise agree with the Examiner that there would be no invention in utilizing the movement of two corrugated members instead of a single member as in Halsey, in view of the Persons patent 2,180,018, which is relied upon to show the latter feature. While the wafer of the Persons patent may not be imperforate or formed of a pair of solid disks, as claimed, such construction is old in the art as shown by Halsey. We see nothing inventive or unobvious in making both disks of the wafer of Halsey flexible if desired.

"Claim 20 contains the limitations that the disks are essentially flat with clean and smooth adjacent faces. * * * While Halsey proposes the use of Pulverized quick lime in the chamber between the disks and shows what appears to be a cupped diaphragm as distinguished from the essentially flat wafer called for in this claim, * * * it would not amount to invention to make the Halsey plates essentially flat since this form of wafer appears to be well known to the art, nor do we see anything patentable in the idea of making the adjacent faces of the disks clean and smooth. Halsey apparently uses powdered lime because of the gas selected, but it is to be noted that he uses high grade tin plate for his diaphragm, which is ordinarily clean and smooth.

"Claims 21 and 22 appear to be rejected on the ground that they do not patentably distinguish over claim 20. Appellant points out that claim 21 defines the disks as being essentially flat, which has already been referred to above, and that they have concentric corrugations, the latter feature being old in the art as shown by Halsey, Persons and Wingfield. As to the contiguousness of the adjacent faces of the disks throughout, as defined in claim 22, this limitation appears to be fully satisfied in the patents to Persons and even Halsey when the disks are collapsed."

Citing the cases of In re Hofmann, 95 F.2d 257, 25 C.C.P.A., Patents, 975, and In re Bencker, 25 C.C.P.A., Patents, 1097, 96 F.2d 326, appellants contend that: "The Examiner and the Board neglecting the directions given them by this Court in the above cited cases, considered the requirements of the claims individually rather than collectively, ignoring certain requirements, and both straining the references and combining the references regardless of type."

Referring to the invention in the Hofmann case, this Court in the opinion of the majority, so far as pertinent, stated [25 C.C.P.A. 975, 95 F.2d 259]: "* * * His [appellant's] creative concept should therefore be considered in its entirety in order to determine whether the solution of the problem confronting him (that of providing a container that would prevent the unintentional use of poisonous preparations) involves invention. * * *"

The Bencker case held that invention was involved in the creative concept of combining elements of the prior art, as the structure defined in appellant's application would not be obvious to one skilled in the art after examining the cited references.

The point of law which appellants raise was considered and passed upon by this Court in the recent case of In re Stover, 32 C.C.P.A., Patents, ——, 146 F.2d 299. There we held that under well-established authority no creative concept or invention is involved if the cited references, individually or collectively, suggest doing the thing that the applicant has done.

Obviously, the decisions relied upon by appellants are not applicable to the situation presented by the record in the instant case. The appealed claims, in their entire-

ty, fail to disclose a creative concept for the reason that what appellants have done would be obvious to one skilled in the art after examining the cited references.

With respect to appellants' complaint as to the use of the references by the Patent Office, it may be well to call attention to the fact that the object of an inventor who applies for a patent should be not only to obtain a patent for his invention, but also to obtain a valid patent that will not be subject to a successful subsequent attack for infringement.

It is our opinion based upon a study of the facts herein and the references cited that the Board of Appeals properly rejected the appealed claims.

For the reasons stated, the decision of the Board of Appeals should be affirmed.

Affirmed.