36 C.C.P.A.(Patents)

## Application of RIPPER.
### Patent Appeals No. 5489.

United States Court of Customs and Patent Appeals.

Dec. 7, 1948.

James Edwin Archer, of Stamford, Conn. (Hal. H. McCaghren, of Stamford, Conn., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

Kurt E. Ripper, deceased, by American Cyanamid Company, assignee, has appealed here from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner finally rejecting as unpatentable over the prior art all of the claims, 15, 18, 20, 21, 22, 25, 26, 28, and 29, of an application for a patent, serial No. 378, 740, for resinous moulding compositions.

The prior art relied upon by the examiner is as follows:

| | | |
|---|---|---|
| I. G. Farben (Br.), | 490,688, | August 19, 1938; |
| Ripper, | 2,318,560, | May 4, 1943; |
| D'Alelio, | 2,320,816, | June 1, 1943; |
| D'Alelio | 2,320,818, | June 1, 1943; |

Synthetic Resins and Allied Plastics, 1937 edition, Morrell, pages 92,·93, and 94.

The board in its decision reversed the decision of the Primary Examiner with respect to his rejection on the Ripper patent of claims 18, 20, 21, and 28 on the ground of double patenting, but otherwise affirmed the action of the examiner.

Claims 15, 28, and 29 are article claims. All of the other claims are directed to process.

The alleged invention relates to the production of plastic molding compositions, which are consolidated under heat and pressure in order to produce articles possessing high mechanical strength, good arc heat and glow resistance, as well as high impact strength.

It is said that the alleged invention is attained by the intimate association of pieces of asbestos thread or cord woven or unwoven with an amino plastic resin "which may be polymerized under alkaline conditions to the infusible and insoluble stage." Claims 18 and 28 are illustrative of the subject matter involved and read as follows:

"18. A process of producing molding compositions, moldings of which have high mechanical strength, which comprises impregnating spun asbestos threads with an amino plastic resin which is a formaldehyde

condensation product of an amidine and which will cure under alkaline conditions, drying the impregnated asbestos threads and dividing the impregnated asbestos threads into pieces about ¼—1 inch in length.

"28. A molding composition suitable for the production of moldings having a high mechanical strength comprising spun asbestos threads about ¼—1 inch in length impregnated with a polymerizable melamine-formaldehyde resin syrup"

Claim 20 is similar to claim 18 except that it calls for "impregnating asbestos cloth" instead of "impregnating spun asbestos threads," and also in that it provides for dividing the cloth after it has been impregnated into pieces of an area of about ⅟₁₆ square inch to about 1 square inch.

Claim 21 is like claim 18 but in addition thereto it provides for "partially polymerizing the resin."

Claim 22 is similar to claim 18 but is limited to "a melamine-formaldehyde resin syrup."

Claim 25 differs from claim 18 in that it calls for "impregnating spun asbestos threads with an amino plastic resin, the threads being cut to length and divided before impregnation with the resin and the drying and consolidating of said threads with heat and pressure.

Claim 26 is like claim 25 except that the amidine is restricted to "a melamine-formaldehyde resin syrup."

Claim 29 is the same as claim 28 except that it does not call for "spun asbestos threads."

Claims 18, 21, 22, 25, 26, and 28 all call for "spun" asbestos threads.

The I. G. Farben patent discloses the manufacture of electrical insulating bodies made from a resin. One of the means of forming that resin is by condensing formaldehyde with "melamine." Asbestos as a filler in the resin is also disclosed.

The patent to D'Alelio, No. 2,320,816, is for aminoplast containing halogenated nitrile. It discloses resins made from formaldehyde and amidines, such as dicyandiamide or triazines. It also discloses asbestos in rather short fiber lengths among other materials to be used as a filler for the resin. It is said in the specification of the patent that the products of the invention are particularly adapted for use as fire retardants and in the making of arc-extinguishing tubes, which are capable of producing an arc-extinguishing gas under the heat produced by the arc.

The D'Alelio patent, No. 2,320,818, relates to condensation products of aminotriazines, aldehydes and halogenated aliphatic nitriles. It discloses a molding compound of a melamine-formaldehyde partial condensation product. It also discloses among various other fillers to be compounded with the resin "asbestos, including defibrated asbestos."

In the Morrell publication the use of asbestos is shown as an important filler for resins and also that when asbestos is used in plastic compositions that the fibers should not be more than ¼ inch to 1½ inches long. In commenting on the use of shorter fibres of asbestos, it is stated in the publication that "Shorter fibres are used with synthetic resins to make fireproof and heat-resisting mouldings."

It is not necessary to discuss the Ripper patent for the reason hereinbefore stated.

The Primary Examiner rejected all of the claims as unpatentable over either of the patents of D'Alelio and also as being unpatentable over the I. G. Farben patent in view of the Morrell publication.

Subsequent to the statement of the examiner, three affidavits were filed on behalf of appellant. At the time the affidavits were filed the examiner had lost jurisdiction of the matter and the case was not subject to amendment under rule 68, Rules of Practice, U. S. Patent Office, 35 U.S.C.A. Appendix.

It does not appear that the application was remanded to the examiner under rule 138, Rules of Practice, U. S. Patent Office, and there is no mention in the decision of the board of those affidavits. Therefore, there is no showing here that the board could have considered the affidavits under rule 138, and consequently they are not before us for consideration. In re Ayers, 154 F.2d 182, 33 C.C.P.A., Patents, 874.

It is admitted by appellant that the D'Alelio patents and that of the I. G. Far-

ben patent describe a moldable composition comprising a resin of the class claimed by appellant, but appellant contends that those references are directed to a particular resin within the class and to the properties of such resin, and that the disclosure of asbestos fibres being used as a filler is "prophetically stated" among other "innumerable modifying agents." It is clear, however, that those references not only disclose a resin of the class set out in the involved claim, but they likewise disclose the use of asbestos fibres as a filler in the making of moldable compositions.

Appellant seems to base his contention that the involved claims are patentable over the prior art upon the ground that all of the claims relate to "thread" and "spun thread" as distinguished from asbestos fibres. Several of appellant's claims are restricted to "spun" threads, as hereinbefore mentioned. We are unable to see that such limitation can be held to be a patentable distinction over the prior art. Other claims do not contain such limitation. Therefore, it can not be considered to be critical. In re Fear, 136 F.2d 908, 30 C.C.P.A., Patents, 1197.

It seems to us to be obvious that spun thread would possess a higher mechanical strength than fibers. Therefore, we can not properly hold that there is any unexpected improvement when spun threads are used.

Counsel for appellant argues vigorously that all of the references disclose asbestos fibres, and that the use of the term "thread" in the involved claims renders them patentable over the prior art. In support of that contention, counsel for appellant cites the case of In re Hill, 161 F.2d 367, 34 C.C.P.A., Patents, 1062, and states that "dictionary definitions are not evidentiary on chemical matters in the absence of chemistry reference works in support thereof." In that case, the meaning of "carbamide," which is a distinct chemical term, was involved, and it is our opinion that the word "thread" as used in the involved application and claims is not used in a chemical sense. While "thread" is defined in Hackh's Chemical Dictionary, 3d Ed., as "a string, q. v."; there is also found in the same publication with reference to the term

"string" that it is a gold-plated quartz thread used in Einthoven galvanometers. Therefore, it is clear that in ascertaining the meaning of "thread" as it appears herein, reference properly may be made to the ordinary dictionaries.

Thread is defined in Funk and Wagnalls New Standard Dictionary, 1938, as not only being a slender cord composed of two or more yarns or filaments, but also as "A filament of any substance; * * *." That definition it seems to us renders the ordinary meaning of the word "thread" to include a "fiber." Therefore, we hold that the "thread" of appellant's application is not patentably distinguishable from the fiber disclosed in the references.

Appellant points out in his brief that claim 18 calls for aminoplastic resin which will cure under alkaline conditions, and the drying of an impregnated asbestos thread. Even though such statement is correct, it appears to us that the condensation products disclosed in the D'Alelio patent, No. 2,320,818, are aminoplasts and may be cured under alkaline conditions. The drying of the patentee's compound is described in that patent.

Appellant in his brief appears to lay some stress upon the recitation of "partially polymerized resin" as appearing in claim 21. We find nothing critical in the limitation of "partial polymerization" for the reason that in the specification it is set out that "since the partial polymerization is not essential, it may even be omitted entirely or in part."

While it is true that claim 22 calls for a specific malamine-formaldehyde resin, one of the examples in the D'Alelio patent, No. 2,320,818, mentions a "melamine-formaldehyde partial condensation product."

While claims 25 and 26 call for "the additional element of consolidating the impregnated threads with heat and pressure," the D'Alelio patent last referred to discloses that the compound "was molded for two minutes at 130° C. under a pressure of 2,000 pounds per square inch."

It is clear to us that the references disclose not only the molding composition but also the process of appellant.

While claim 20 recites the use of asbestos cloth, the said asbestos fabric disclosed in the D'Alelio patent, No. 2,320,818, meets that limitation. Cloth is not necessarily woven. It is commonly known that cloth or sheet fabric may be made by a felting process. Therefore, we find no patentable difference between appellant's use of asbestos cloth which is woven, and the asbestos fabric of the patent made by the felting process.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.