alleged to be himself a retail meat dealer subject to the regulation.

From the foregoing it is clear that the protest was properly dismissed by the Director of Price Stabilization, without prejudice to the filing of a new protest or protests by individual members of the Association.

A judgment will be entered dismissing the complaint.

38 C.C.P.A.(Patents)

### Application of PATRICK.

#### Patent Appeal No. 5760.

United States Court of Customs and Patent Appeals.

March 6, 1951.

Rehearing Denied June 26, 1951.

O'Connell, J., dissented.

Joseph V. Meigs, New York City (Fisher & Christen, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting all of the claims 16 to 23, inclusive, of an application for a patent, serial No. 549,811, filed August 16, 1944, alleging new and useful improvements "For Polythic Polyglycol Polybasic Acid Polymer."

The claims read as follows:

"16. Process which comprises reacting an akaline polysulfide with a condensation product obtained by condensing an organic polycarboxylic acid with a glycol said glycol having a hydroxyl group attached to each of two different carbon atoms and also having, in addition to said carbon atoms and said hydroxyl groups, the structure $-CH_2$ $SSCH_2-$.

"17. Process which comprises mixing an aqueous solution of an alkaline polysulfide with an aqueous dispersion of a condensation product obtained by condensing an organic polycarboxylic acid with a glycol said glycol having a hydroxyl group attached to each of two different carbon atoms and also having, in addition to said carbon atoms and said hydroxyl groups, the structure $-CH_2SSCH_2-$, and heating said mixture to cause reaction of the alkaline polysulfide with the said condensation product.

"18. Process which comprises mixing an aqueous solution of an alkaline polysulfide with an aqueous dispersion of a condensation product obtained by condensing an organic polycarboxylic acid with a glycol having the formula $OH(CH_2)_nSS(CH_2)_nOH$ where n varies from 2 to 20 and heating said mixture to cause reaction of the alkaline polysulfide with the said condensation product.

"19. Process which comprises mixing an aqueous solution of an alkaline polysulfide with an aqueous dispersion of a condensation product obtained by condensing an organic polycarboxylic acid with a glycol having the formula $OH\ CH_2CH_2SSCH_2-CH_2OH$ and heating said mixture to cause reaction of the alkaline polysulfide with the said condensation product.

"20. Product made according to the process of claim 16.

"21. Product made according to the process of claim 17.

"22. Product made according to the process of claim 18.

"23. Product made according to the process of claim 19."

The application relates to polysulfide polymers characterized by recurring $-SS-$ linkages in the chains thereof, each sulphur atom of the linkages being bound firmly to adjacent carbon atoms.

The claims were rejected by the Primary Examiner as unpatentable because of undue breadth and indefiniteness, as well as for insufficient disclosure in the specification.

It may be noted that the claims are directed to process and product.

Counsel for appellant make no contention that any one claim possesses any limitation by which it may be patentably differentiated from any other claim and, therefore, all of the claims stand or fall together.

In the decision of the Board of Appeals it was pointed out that the original description and claims of the application related to the production of the esterification product of the polythic glycol and polycarboxylic acid and also the polysulfide polymer resulting from after-treatment of such condensation product with an alkaline polysulfide.

All of the involved claims relate to the sulfide after-treatment and it is to that portion of the specification containing the description of the alleged invention said to be defined by the claims which we must look in order to make our decision. The only specific example of the process and product sought to be defined by the claims is as follows: "1. empirical molecular weight of the oil or product derived in the foregoing example is dispersed in water by any suitable means, e. g., by the use of a high speed agitator and a dispersion agent is necessary and the aqueous dispersion so obtained is treated with an equal molar ratio of, for example, sodium tetrasulfide and *heated with agitation for a period of 1 hour*, after which the dispersion is allowed to settle and the supernatant liquid is withdrawn. The dispersion can be readily washed by repeating treatment with water with intermediate settling out of the insoluble dispersion. When sufficiently purified, the material is treated with acid which causes coagulation to a rubber-like mass." (Italics supplied).

If any of the reasons for rejection by the tribunals below are found to be proper here, it will be unnecessary to discuss the other grounds.

Claim 19 was considered below as illustrative of the involved subject matter. It may be observed that the claim calls for a mixing of an aqueous solution of an alkaline polysulfide with an aqueous dispersion of an organic carboxylic acid with a glycol having the formula $OH\ CH_2CH_2SSCH_2-CH_2OH$ and heating the mixture so that a

reaction is created of the alkaline polysulfide with the condensation product.

We find, as did the examiner and the board, that in both the claim and in the description of the alleged invention there is nothing to indicate what appellant means by the term "heating." Therefore, the tribunals below held that the use of that term is indefinite in that no temperature nor range of temperatures is given in explanation of the term and, therefore, that the application fails to meet the statutory requirement providing for a full, clear, concise, and exact disclosure of the claimed invention.

It is contended that a worker skilled in the art is aware of what such temperature should be in order to constitute heating and that therefore such knowledge would be supplied by such worker and that a definite disclosure of a temperature or temperatures is not necessary. It is further contended that any heating between room temperature and below the boiling point of water could be used. The board observed such a range to be a wide one and was of opinion that the requirements of R.S. § 4888, 35 U.S.C.A. § 33, would require a statement of a specific temperature or temperatures.

Subsequent to the decision of the board, a petition for reconsideration was filed by counsel for appellant. Together with such petition was an affidavit which was not accepted by the board. In its action on the petition the board found no reason to make any change in its former decision.

Several patents were listed but not set out in the petition and we are asked by counsel for appellant to take judicial notice of them because, it is stated, such notice would indicate to us that the reaction set out in the claims will occur at any common temperature and that therefore it was not necessary for appellant to make any specific disclosure thereof.

■ We are of opinion that the affidavit is not properly before us for consideration. In re Ayers, 154 F.2d 182, 33 C.C.P.A., Patents, 874; In re Ripper, 171 F.2d 297, 36 C.C.P.A., Patents, 743.

■ We are further of opinion that we may not judicially notice specific patents under circumstances such as exist here. In re Stauber, 45 F.2d 661, 18 C.C.P.A., Patents, 774.

Counsel for appellant has not included the listed patents in the present record and statements contained concerning such patents in an affidavit are not satisfactory evidence of what those patents are.

■ The theory proposed by counsel for appellant that it would be obvious to one skilled in the art to use a proper temperature for the reason that any common temperature would be operative, is not the test. Brand v. Thomas, 96 F.2d 301, 25 C.C.P.A., Patents, 1053; In re Richardson, 143 F.2d 616, 31 C.C.P.A., Patents, 1152.

Clearly, if knowledge of the temperature was common to the art and available in prior patents there is no reason why appellant could not and should not have referred to them in his specification. Without such reference an essential part of the process is left entirely to conjecture and experiment.

■ It must be remembered that there is nothing in the specification to indicate that any heating range from room temperature to the boiling point of water is or may be used. All that is stated in the specification is, as is shown in our quotation therefrom, that the "aqueous dispersion * * * [is] heated with agitation for a period of 1 hour * * *." We agree with the tribunals below that the disclosure of merely "heating" in the specification is not sufficient to teach the art the use of the process with the statutory degree of particularity required by the statute. In re Jolly, 172 F.2d 566, 36 C.C.P.A., Patents, 825.

Since we are of opinion that the application lacks sufficient disclosure of the temperature required by the process, we are constrained to hold that the tribunals of the Patent Office did not err in rejecting the claims upon that ground. Therefore, it is not necessary to discuss the other grounds of rejection.

For the reasons given herein, the decision of the Board of Appeals is affirmed.

Affirmed.

GARRETT, Chief Judge, (specially concurring).

In the contemporaneously decided case of Ex parte Dalton, 188 F.2d 170, 38 C.C.P.A., Patents, ——, a specially concurring opinion has been filed relating to the matter of the affidavits discussed there as here in both the majority and dissenting opinions. The issue in all material aspects is the same here as there and reference is made here to the specially concurring opinion there filed.

O'CONNELL, Judge (dissenting).

The two cases upon which the majority relies to the effect that the affidavit here in issue is not properly before the court were rendered obsolete by the action of the commissioner when he abolished the rule of those cases and all of the red tape which its enforcement entailed in the tribunals of the Patent Office.

This court has otherwise regarded an affidavit submitted on a petition for reconsideration as cumulative argument of the same character as that of the request for reconsideration and has accepted the argument thus advanced in the affidavit as a ground of reversal of the board on the question of patentability.[1] There is no reason why an applicant should claim a detail obvious to any person skilled in the art, and the majority in the enforcement of such a requirement here has merely made an unsupported guess.[2]

The specification and the claims describe heating the condensation product with an alkaline polysulfide. The exact degree of temperature to which the product must be raised to effect the reaction was not given, however, either in the claims or in the illustrative example disclosed in the specification as to how appellant obtains the final reaction product. Therefore, the examiner, among other things, rejected all of the claims as indefinite, for the stated reason that under the well known language of R.S. § 4888 appellant's application, "in failing to mention any specific temperature, does not constitute the full, clear, concise and exact disclosure which would enable a

person skilled in the art to practice the invention without further research or experimentation."

The claims were also rejected by the examiner as unpatentable over the disclosure of the art of record; the British patent to Groves, of December 15, 1936. Groves stated that: "According to this invention viscous to caoutchouc-like products are obtained by the condensation of a thiodiglycol * * * with a dicarboxylic acid, a polycarboxylic acid or a hydroxypolycarboxylic acid, or with an anhydride or ester of any of these acids." The examiner held that: "In view of the breadth of the term 'alkaline polysulfide' it is considered that the polysulfide glycols in Groves or esters first formed therewith are alkaline to some degree or are equivalents at least, of alkaline polysulfides. Carrying out the reaction in aqueous medium is not seen to be a patentable distinction."

The Board of Appeals affirmed the decision of the examiner, explaining, however, that in so doing "No references have been relied on, the claims having been rejected for the reason that they were too broad and were without adequate support in the description." With respect to the primary point here in issue the board stated: "It appears also to be appellant's view that the omitted details from the example on page 7 [of appellant's specification] may be readily supplied by anyone skilled in the art. It is said for example, that the heating temperature must necessarily be something above the room temperature and below the boiling point of the aqueous medium. This is of course a very wide range of temperatures and it appears to us that a compliance with the requirements of Sect. 4888, R.S. would require a definite statement of the temperature as well as other essential conditions for carrying out what the inventor believes to be the best mode of accomplishing his invention."

Appellant petitioned for rehearing and reconsideration of the decision of the board, contending that no person skilled in the art, with appellant's disclosure before him,

---

1. In re Hutchison, 104 F.2d 829, 26 C.C. P.A.,Patents, 1370.

2. Ex parte Lilienfeld, 44 U.S.P.Q. 174.

would have the slightest difficulty in selecting a suitable temperature for carrying out the claimed reaction, and that temperatures between about 135° and 220°, Fahrenheit, are typical temperatures employed for such a purpose by any person engaged as a journeyman in the field of chemical compounds characterized by the presence of polysulfide linkages.

In support of the petition for reconsideration appellant submitted proof in the form of an affidavit by Franklin O. Davis to show that the art was familiar with the appropriate temperature to be used and that this temperature was demonstrated by a number of prior art patents listed in the affidavit. The contents of the affidavit was summarized for the board as follows:

As appears from that affidavit and the prior art identified therein alkaline polysulfides have been extensively employed in polymer-forming reactions and in such reactions solutions of alkaline polysulfides have been heated with other reactants at temperatures between about 135°F. and 220°F.

Appellant further contended that the position of the examiner and the board was completely refuted by the facts detailed in the affidavit by Davis, who at the time was assistant manager of the Research and Development Department of the Thickol Corporation. With reference to him and his unquestioned standing in the art, appellant stated before the board: "He is a man skilled in the art at the time of applicant's application, he selected a temperature of 185° F., *without any experimentation* for carrying out the reaction described by applicant in the example on page 7 of applicant's specification and the said Franklin O. Davis had no difficulty in successfully following applicant's instructions."

The petition requesting reconsideration was granted but denied on reconsideration with respect to making any change in the board's original decision. On the primary point in issue, the board stated: "We are still of the opinion that the present disclosure does no comply with the requirements of the statute as to proper support for the claimed subject matter."

Under the general provisions of the patent laws governing the application for and the issue of patents,[3] and under certain rules of practice prescribed by the Commissioner of Patents for the conduct of proceedings in the Patent Office,[4] noncompliance by an inventor with the provisions of R.S. § 4888 with respect to an adequate description is a question of fact[5] upon which the Primary Examiner, and not the applicant, has the burden of proof.[6]

An essential condition not implied by the familiar knowledge of one skilled in the art may not be omitted from the description required by R.S. § 4888 and in his description an inventor must do something more than give cues for future experiments.[7] However, to condemn a disclosure for insufficiency, it is by no means enough to show that even a person skilled in the art may find it necessary to make several tests or trials before he attains the desired result.[8]

3. R.S. §§ 4888, 4893, 4903, 35 U.S.C.A. §§ 33, 36, 51.

4. Rules of Practice in the United States Patent Office 65, 66, 135, new Rules 104, 106, 107, 111, 112, 193, effective March 1, 1949, 35 U.S.C.A.Appendix. See also In re Stover, 146 F.2d 299, 32 C.C.P.A.,Patents, 823, 825.

5. A. B. Diek Co. v. Barnett, 2 Cir., 288 F. 799.

6. In re Vickers, 141 F.2d 522, 31 C.C.P.A.,Patents, 985; In re Hunter, 166 F.2d 189, 35 C.C.P.A.,Patents, 931; In re Whitfield, 174 F.2d 137, 36 C.C.P.A., Patents, 1023; Ex parte Edmond Riszdorfer, 34 U.S.P.Q. 338; Ex parte Jacobson, 39 U.S.P.Q. 326; Ex parte Johnson, 40 U.S.P.Q. 576; Ex parte Lilienfeld, 44 U.S.P.Q. 174; Ex parte Schroy, 58 U.S.P.Q. 621, 622; Ex parte Amende and Ender, 72 U.S.P.Q. 394; Ex parte Adams, 77 U.S.P.Q. 482.

7. Standard Brands v. National Grain Yeast Corp., 308 U.S. 34, 38, 60 S.Ct. 27, 84 L.Ed. 17; In re Beach, 152 F.2d 981, 33 C.C.P.A.,Patents, 815; H. Ward Leonard, Inc., v. Maxwell Motor Sales Corp., 2 Cir., 252 F. 584, 588.

8. Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 65, 43 S. Ct. 322, 67 L.Ed. 523; Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir,, 139 F.2d 633; A. B. Dick Co. v. Barnett, 2 Cir., 288 F. 799.

Moreover, invention may be involved in a disclosure which provides that the respective steps of the process defined by the appealed claims may be carried out at the temperature most effective to obtain the desired results.[9]

The Board of Appeals nowise controverted appellant's contention, and the authorities cited in his petition for reconsideration, that under the well settled doctrine of this court as disclosed by those authorities the burden of proof rested upon the tribunals of the Patent Office, and not upon the applicant, to show that the appealed claims were too broad and the disclosure of the specification was insufficient; and that this burden of proof is not sustained by assertions to that effect unaccompanied by a factual recital of support. Mention of the point has been likewise omitted from the brief submitted on behalf of the Solicitor for the Patent Office.

There can be no question, however, of the validity and predominance of the rule that the burden of proof is upon the Primary Examiner, and not the applicant, to show that a claim presented for allowance covers an inoperative species, or that it is too broad, or that the disclosure in the specification is inadequate or incomplete. Those three points, as here, are often closely related.

Appellant states in his brief, and the point is nowhere disputed, that the art was already familiar with condensation products of the acid-glycol reaction, as disclosed by the British patent to Groves hereinbefore described. Appellant also urges that "Quite obviously there are situations where it is necessary to specify a precise temperature, and others, like the present, where the reaction will occur (though at different speeds) at any common temperature." Appellant further contends with persistent vigor that: "The Patent Office has given neither applicant nor this Court any opportunity to understand the reasons for its objections to the disclosure, or what materials, if any, it believes to be inoperative, what materials or reactions, if any, it be-

lieves would give undesirable results, why the materials or conditions given are not representative or sufficiently informative, or what expected degree of heating could be so undesirable as to render it necessary that a particular degree be specified; and such a situation will prevail more and more in cases such as this if the rule that the burden of proof is on the Patent Office is weakened. * * *"

There is no doubt whatever that the court may not take judicial notice of any feature defined in an issued patent which is no part of the record before the court and which is not a matter of common knowledge.

The Board of Appeals in the instant case, with respect to the affidavit which was submitted with the petition for rehearing, held that "Under the provision of Rule 138, we must refuse to accept the affidavit or to remand the case to the Primary Examiner for reconsideration in view of such affidavit." The soliciter in his brief likewise contends that "under the established rule of this Court, the affidavit is not properly before the Court for consideration," citing In re Ayers and In re Ripper.[10]

Those two decisions were rendered in support of the proper construction and application of old Rule 138 of the Rules of Practice in the Patent Office. Were that the prevailing rule in the Patent Office when the decision in the instant case was rendered by the Board of Appeals, the rule would have governed the situation presented by the record. It is noted, however, that the decision of the board on the point in question was rendered March 10, 1949, and that on the previous March 1, 1949, Lawrence C. Kingsland, then Commissioner of Patents, had adopted and promulgated, effective as of that date, new rules governing the practice and procedure in the Patent Office whereby old Rule 138 was revised and supplanted by new Rule 195, which reads: "195. *Affidavits after appeal.* Affidavits or exhibits submitted after the case has been appealed will not be admitted without a showing of good and sufficient reasons

9. In re Haney, 158 F.2d 296, 34 C.C.P.A., Patents, 767.

10. In re Ayers, 154 F.2d 182, 33 C.C.P.A., Patents, 874; In re Ripper, 171 F.2d 297, 36 C.C.P.A.,Patents, 743.

why they were not earlier presented." [Rule 138.]

The rejection of claims on the ground of insufficiency of the disclosure in the application is not merely a matter of practice in the Patent Office but one which is plainly within the supervisory jurisdiction of this court.[11] And while it is beyond the spirit of the law for the court to order the issuance of a patent which, upon attack, would be declared invalid because of the insufficiency of its disclosure, or because of its infringement of the prior art,[12] nevertheless where the insufficiency has not been clearly shown, or where, as here, the art relied upon to invalidate the claims has been considered and rejected by the Patent Office, the presumption of validity, while not conclusive, is greatly fortified.[13] However, as Chief Judge Garrett correctly pointed out in a recent case:[14] "Our primary concern, in cases such as this, is not what might happen in an infringement proceeding if the appealed claims should be allowed, but with the fundamental question of whether their allowance is proper."

Despite appellant's failure in his specification or claims to name the specific degree of temperature to which the involved mixture must be heated to effect the reaction, it is obvious that the exact nature of such temperature is not a characteristic essential to novelty. The appealed claims are not subject, therefore, to the criticism that the language of the claims is indefinite "at the exact point of novelty" as was the language of the claims rejected in General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 371, 58 S.Ct. 899, 903, 82 L.Ed.

11. In re Stauber, 45 F.2d 661, 18 C.C.P.A., Patents, 774.

12. In re Kuhn, 150 F.2d 145, 32 C.C.P.A., Patents, 1110.

13. Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 726.

14. In re Muskat, 187 F.2d 626, 38 C.C.P.A., Patents, ——.

15. Since writing the dissenting opinion hereinbefore set forth, I have discovered that the United States Circuit Court of Appeals for the District of Columbia Circuit has also squarely held, in ac-

1402. Nor is there any tangible reason of record why the appealed claims should be rejected on the ground of undue breadth.

For the reasons stated, the decision of the Board of Appeals should be reversed.[15]

cordance with the provisions of the patent laws and the rules of practice of the Patent Office, not only that the Primary Examiner and likewise the Board of Appeals, in passing upon an applicant's claims for a patent, are required to state the reasons for their opinions on the question of patentability, but also that no responsibility whatever rests upon the applicant to request that the required reasons be so stated by those tribunals. International Standard Electric Corp. v. Kingsland, 83 U.S.App.D.C. 355, 169 F.2d 890.