29 C.C.P.A. (Patents)

### In re DUGGAN et al.
### Patent Appeal No. 4548.

Court of Customs and Patent Appeals.
Dec. 29. 1941.
Rehearing Denied March 23, 1942.

Frank H. Marks, of Chicago, Ill. (Ivan P. Tashof, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This case presents the not unusual situation of an application in the United States Patent Office for a patent for a process in which certain claims, specific to certain concentrations of reagents and temperatures, were allowed, and certain claims, couched broadly in terms of result or function, were denied. It is with the question of whether or not these latter claims were properly denied by the Board of Appeals of the Patent Office that we are here concerned.

Appellants' process is in the art of finishing cellulosic textile fabrics such as cotton cloth used for making shirts. The process is particularly useful in finishing cotton broadcloth. The process accomplishes two purposes: (1) It preshrinks the fabric, and (2) it gives it a permanent finish and attractive appearance. There are a number of steps involved in the process, including putting the fabric to be treated in a copper sulphate bath, where it is impregnated or "padded" with copper sul-

phate, and then passing it into a bath made up of a mixture of caustic soda and ammonia, causing the filaments to swell. Following this bath, the fabric is rinsed in cold water, subjected, with agitation, to a bath of dilute sulphuric acid, and washed in cold water to remove the acid. The excess moisture is then removed and the material is stentered or stretched to not more than its original width.

The specification calls for a certain range of concentration of the chemicals involved, and also calls for definite times and temperatures in order to obtain the desired result. In their specification, appellants lay considerable stress on the fact that a slight change in the composition of the baths, or in the conditions of time and temperature, may have quite an influence in the result obtained. We quote: "We are aware that other methods have been suggested for treating fabrics, but we have found from a long and thorough study thereof that said previously suggested methods, in most cases, fail to produce the optimum results. Inasmuch as said treatments involve a wide variety of physical and chemical factors, a comparatively slight variation of one or more of said factors is found to produce a great change in the final results, and in view of the close inter-relation of said factors, said results are not usually predictable."

The Primary Examiner, in his statement made following appeal to the Board of Appeals, quoted from "the remarks on page 4 of the amendment of Nov. 21, 1939," submitted by appellants (not otherwise found in the record) as follows: "It is desired to emphasize again the point which we brought out in the interview that even slight changes in the baths may produce very important differences in results. These changes may take the form of variation in the composition of the baths themselves as well as differences in the conditions of concentration, time and temperature. Applicants recognize as experts in this art that cuprammonium sulphate and caustic soda have been used for years in the treating of textile fabrics."

The allowed claims 6, 7, 10 and 11 recite specifically the conditions emphasized by the applicants as being critical.

The examiner rejected appealed claims 1, 2 and 5, which do not include the critical conditions, on certain prior art and for the further reason that the claims, the sole novelty of which resides in a functional limitation, were vague and indefinite. Upon appeal, the board affirmed the action of the examiner in rejecting said claims 1, 2 and 5 for substantially the same reasons. Upon reconsideration, the board adhered to its former opinion and went into somewhat more detail in its rejection on the references. The concluding sentence of this latter opinion states: "The examiner's action is therefore again affirmed for the reasons herein and heretofore given."

From the aforesaid decisions of the board, appellants have appealed to this court.

We regard claim 1 as illustrative of the three claims on appeal. It follows: "1. A method of pre-shrinking and finishing cellulosic textile fabric, consisting in padding the same with copper sulphate, subjecting the padded cloth to a bath containing caustic soda and ammonia, removing excess alkali, setting the fibre by means of acid, and removing the excess acid, *the strength and temperature of said baths and the time of treatment being so adjusted that substantial solubilizing of the fiber is avoided.*" (Italics ours.)

The italicized language in the above-quoted claim (which language also appears in the other appealed claims) is the only attempt to define the critical conditions and this, as is apparent, is done solely in terms of result or function. Claims 2 and 5 have the additional limitation of "stentering the fabric to a width not substantially greater than its original width" and claim 5 additionally specifies the functional effect of the alkali treatment "to swell the fibre" and the subsequent acid bath for "deflating and setting the fibre."

In view of our conclusion it becomes unnecessary to either cite or discuss the prior art.

The examiner in his statement said that if the appealed claims involved any novelty over the references cited, it would reside solely in the above-italicized functional limitation. Appellants have pointed out that there is a difference between their invention and the inventions of the references other than that of the novelty of the said functional clause. They do not urge, however, that such slight differences as they have called attention to, of themselves lend patentability to the claims. Appellants also differ with the holding of the examiner in that they insist that the phrase "stentering the fabric to a width not substantially greater than its original width"

in claims 2 and 5 relates to a step which accomplishes important objectives, and that such step of stentering, limited as it is in the claims, is not found in the prior art. Appellants do not urge, however, that the prior art does not show stentering of the fabric in a process quite similar to that here involved.

It is pointed out in the brief of the solicitor for the Patent Office that stentering is old in the art. He does not state, however, that the exact degree of stentering called for by claims 2 and 5 is shown in the prior art. The solicitor states that the appellants did not raise this question before the examiner or the board and that this fact accounts for the failure of the board and the examiner to make mention of it. He further points out that appellants have not called attention to this fact in the reasons of appeal and also argues that this feature could not possibly lend patentability to the claims. Appellants do not refute said statement of the solicitor except they contend that some of the general reasons of appeal would properly raise the question.

Assuming, without deciding, that appellants' reasons of appeal sufficiently present the question, it is, we think, proper to say that stentering of the degree called for in claims 2 and 5 would not lend patentability to otherwise unpatentable claims. And so, upon this record, the question presented to us is whether the sole patentable novelty in the process claims at bar can rest alone in the said functional statement.

It is to be noted that the functional statement in each of the appealed claims is as follows, "the strength and temperature of said baths and the time of treatment being so adjusted that substantial solubilizing of the fibre is avoided," and that it calls for such a strength, temperature of the baths and time of treatment as will avoid "substantial solubilizing" (dissolving of the fibres.)

We observe that the examiner calls attention to the fact that the said functional phrase first found its way into the application by way of amendment and that nothing is said in the original specification or claims on the subject of solubilizing.

The examiner said:

" * * * If claims 1, 2 and 5 present any novelty over these references [citing the prior art], it resides solely in the functional limitation quoted above. But in these claims applicants appear to make their steps dependent on the result rather than the result dependent upon the steps. It is well established that if the sole novelty of a claim resides in a functional limitation that the claim is vague and indefinite. Ex parte Pacholder, 1890 C.D. 55, and particularly In re Count [Caunt], 465, O.G. 461; 23 C.C.P.A., Patents, 855; 81 F.2d 405; 1936 C.D. 205.

"What are the actual and decisive conditions in applicants' process are not defined in the functional clause. The worker skilled in the art in order to practice the process of claims 1, 2 and 5 would have to resort to lengthy experimentation to determine what the critical conditions are. They certainly are not pointed out in these claims. Applicants state page 1, next to the last paragraph that it required extensive experimentation on their part to determine the critical conditions."

On this phase of the case the board in its original decision said: " * * * Moreover, we agree with the examiner that the concluding clause of each claim, which is primarily relied on to distinguish from the prior art, is highly functional and little more than an invitation to experiment."

Upon request for reconsideration, the board rendered a second decision and without discussing this particular phase of the case said:

"We have given the arguments presented careful consideration but are still unable to see that the appealed claims patentably define over the art relied upon.

"The examiner's action is therefore again affirmed for the reasons herein and heretofore given."

We are in agreement with the tribunals below that under the circumstances at bar appellants cannot rely on said functional statement lending patentability to the claims which are otherwise unpatentable. We agree with the Board of Appeals that the said functional statement attempts to cover appellants' real invention by stating results rather than conditions and leaves it open to subsequent workers in the art to experiment on the strength and temperatures of the baths and the time of treatment so as to accomplish the desirable results although they say such results flow from certain stated critical strengths and temperatures of the baths and the time of treatment in the process. Appellants have obtained the allowance of claims specifically defining their invention. They now seek to obtain claims which do

not mark the limits of the invention and which, in our opinion, do not comply with the statutory requirements relating to such subject matter.

It is not necessary to review the abundance of authority which clearly supports the conclusions of the tribunals below. We think that the case of In re Caunt, 81 F.2d 405, 406, 23 C.C.P.A., Patents, 855, decided by this court, is apposite and points out the fallacy of appellants' contention here. The process in that case was for carbonizing solid carbonizable material in a retort. One of the claims of the application read:

"21. In the process of carbonizing solid carbonizable material in a retort, the steps comprising supplying the material to the retort, *applying heat thereto at such temperature and moving the retort relative to the material at such speed as to carbonize the material and to form a core of adherent coked material extending throughout a substantial portion of the length of the retort and independent of the retort wall.*" (Italics ours.)

■ There the functional limitation in the claim was relied upon as imparting patentability to the claim. We there said:

"It seems to us, as it evidently did to the tribunals of the Patent Office, that appellant makes his steps dependent upon the result obtained rather that the result dependent upon the steps. In no one of his claims is there recited a speed of rotation, and in only claim 39 is any specific temperature mentioned.

"The claims teach nothing more than that to obtain a certain result heat must be supplied at some temperature and the retort rotated at some speed. Supplying *some* temperature to material and rotating the retort at *some* speed is old in the art. At most, appellant only teaches a different result. He obtains a coke product in the form of a core, where others obtain it in the form of balls.

"When appellant's result is disregarded and his steps alone are looked to, the claims which, as so often has been declared, constitute the measure of the invention, teach the art nothing new.

"If appellant does produce something different from the article produced by Wisner's process, it would seem, as is, in effect, said by the Board, that it must be due to some step different from Wisner's steps. Had appellant disclosed and *claimed*

such a step, a different question would be presented, but no such step, as a step, is claimed.

"Reduced to the final analysis, the case presents itself to us as though one were saying to the public: 'If you would obtain a core of coke of the kind described, apply the proper temperatures and rotate the retort at the proper speeds; you must determine for yourself what are proper temperatures and proper speeds. At least, I do not, in my claim, teach or disclose them. I have found that the result can be obtained, however, and I claim a method patent based upon that result without claiming any step, which, as a step, I distinguish from those steps already taught and used by others in producing coke in a different form.'

"It is not meant to suggest that there is anything improper in stating the result in the claims, but we do not think the public may properly be remitted solely to the result, in order to determine what the actual and decisive step or steps may be.

"Whether one skilled in the art could so determine we do not undertake to say, but, should such be the case, then it is not improper to remark that invention would seem to be lacking.

\*    \*    \*    \*    \*    \*

"The question here is not one of infringement, but one of whether the claims distinguish from the prior art in a manner which makes proper the grant of a patent.

"Section 4888, R.S., as amended, 35 U.S. C.A. § 33, provides that the inventor shall not only file 'a written description' of his invention and discovery, but that 'he shall particularly point out and *distinctly claim* the part, improvement, or combination which he claims as his invention or discovery.' [Language italicized by the court in the opinion quoted from.]

"As has been indicated, the only actual *steps* here emphasized (the result being disregarded, as we think it must be) which appellant 'distinctly claims' are the broad steps of applying temperature, and rotating the retort at some speed (not defined except as it may be implicit in the disregarded result), and these are steps old in the art.

\*    \*    \*"

■ We think the above statement is the law applicable to this case. The claims do not comply with the requirements of the statute in that they fail to teach the art a new, patentable discovery, but merely vaguely and indefinitely suggest a course of

action to workers in the art whereby, if the proper conditions were discovered, followed and applied, desirable results would be obtained. See, also, In re Stack, 87 F.2d 210, 24 C.C.P.A., Patents, 836.

As supporting the position of the decisions of the tribunals below, the following cases are cited by the solicitor: In re Allen, Jr., 115 F.2d 936, 28 C.C.P.A., Patents, 792, 794; In re Andrus, 119 F.2d 428, 28 C.C.P.A., Patents, 1113, and Minnesota Mining & Mfg. Co. v. Coe, 72 App.D.C. 183, 113 F.2d 512. While the last three above-cited cases tend to support the position of the Patent Office, the facts and circumstances involved therein differ to a considerable degree from those at bar.

Being of the opinion that the appealed claims, in respects with which we are here concerned, are too vague and indefinite to comply with the patent laws, we find ourselves in agreement with the decision of the Board of Appeals and the same is affirmed.

Affirmed.