36 C.C.P.A. (Patents)

### Application of JOLLY,

### Patent Appeals No. 5484.

United States Court of Customs
and Patent Appeals.

Feb. 1, 1949.

Busser & Harding, of Philadelphia, Pa. (Frank S. Busser, of Philadelphia, Pa., and Donald A. Gardiner of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C., (J. Schimmel, of Washington, D.C., of counsel) for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner, rejecting all the process claims numbered respectively 3, 4, 6, 9 to 17, inclusive, 22, and 23 of appellant's application for patent relating to the preparation of sulfurized nitriles. Two claims for the product stand allowed, but the process claims were rejected as being indefinite and functional in a material factor of the claim.

We here quote claims 3 and 6, italicizing in each the particular clause which caused the rejection by the tribunals of the Patent Office.

"3. The method of producing oil-soluble. sulfurized nitriles from starting material containing organic acids of at least 10 carbon atoms and selected from the group consisting of fatty acids, rosin acids and mixtures of fatty and rosin acids which comprises contacting said starting material with ammonia vapor at an elevated temperature and in the presence of a dehydrating catalyst for a length of time sufficient to convert a substantial proportion of the acidic components of said starting material to nitriles but insufficient to cause the formation of a substantial proportion of nitriles boiling above the end boiling point of said starting material and reacting the resulting nitrile-containing product with sulfur at a temperature not substantially

less than 190° C. but below the decomposition temperature of the sulfurized nitriles *for a time sufficient to produce a substantially homogeneous product but insufficient to cause the formation of a substantial proportion of oil-insoluble reaction products."*

"6. The method of sulfurizing nitriles of organic acids having at least 10 carbon atoms and selected from the group consisting of fatty acids, rosin acids and mixtures of fatty and rosin acids in order to produce a substantially oil-soluble sulfurized product which comprises reacting said nitriles with sulfur at a temperature not substantially less than 190° C. but below the decomposition temperature of the sulfurized nitriles *for a time sufficient to produce a substantially homogeneous product but insufficient to cause the formation of a substantial proportion of oil-insoluble reaction products."*

■ Claims 4, 9, 10, 11, and 12 are made dependent upon claim 3, each of them reciting "The method defined in Claim 3 * * *," and each of claims 13, 14, and 15 recites "The method of sulfurizing nitriles defined in Claim 6 * * *," thus making each dependent upon claim 6. That is to say, if the italicized clauses of claims 3 and 6 render those claims rejectable as being indefinite and functional, it follows that claims 4, 9, 10, 11, 12, 13, and 14 are rejectable for the same reason. The italicized clauses, supra, are specifically reiterated in claims 16, 22, and 23. Claim 17 has a clause reading "for a time sufficient to become substantially homogeneous but emerges from the reaction zone in less than 35 minutes."

It appears that claim 12, which is dependent on claim 3, like claim 17, defines the time of reaction between the nitrile-containing product and the sulfur as being "less than 35 minutes," and the same is true of claims 13 and 15. This would seem to fix a maximum time but no minimum. The examiner's holding respecting these claims, approved in substance by the board, was expressed as follows: "Claims 12, 13, 15 and 17 were rejected as being indefinite in the language 'less than 35 minutes'. Since the time of reaction is taught [i. e., taught by the specification] to be critical,

these claims should recite a time range involving the sulfurization step. It is held that the mere recitation of the upper time limit is insufficient to render these claims patentable."

It is not deemed necessary to discuss in detail such other limitations as the several appealed claims embrace. We think it obvious that all the claims stand or fall together.

Appellant's process is described by the board as being a two-step process, the first step being the formation of nitriles by reacting a fatty acid, preferably talloil specified in several of the claims, with ammonia, as described in claims 3 and 6, supra. Concerning the disclosure of this step, there was no criticism nor adverse finding by the tribunals of the Patent Office.

In the second step, which involves the sulfurization of nitriles, two factors are involved; viz., temperature and time. Appellant's specification recites: "There are two *critical, interrelated* factors involved in this step, namely, the reaction temper— (sic) [obviously temperature is meant] and the time of reaction." (Italics supplied.)

The criticalness of these factors is clearly implied—in fact, emphasized—at other places in the specification.

We quote further from the specification as follows: " * * * In order to initiate the reaction between nitriles and sulfur, a temperature of about 190° C. is required. A temperature such as 180° C., although not considerably below 190° C., gives an exceedingly slow rate of reaction. After the reaction has been initiated by raising the temperature of a mixture of nitriles and sulfur to 190° C., there is a tendency toward further increase in temperature due to the exothermic nature of the reaction. This is not objectionable provided the processing equipment is properly designed for handling the materials at higher temperature with safety. A short reaction time is exceedingly important in preventing formation of undesirable oil-insoluble reaction products of a sludge-like nature. Thus it is desirable that the reaction be allowed to proceed only so long as to give a product which will be homogeneous at ordinary temperature but not so

long as to cause formation of such oil-insoluble products. The proper time of reaction depends on the proportion of sulfur used and the reaction temperature; the less the proportion of sulfur and the higher the reaction temperature, the shorter being the required reaction time. At a temperature of about 190-200° C., it is desirable that the reaction time be not over about 15 minutes, although somewhat longer reaction times may not be too unsatisfactory for practical operation."

In the brief on behalf of appellant it is said:

"Applicant's position is

"(1) That the claims define a novel and patentable process independently of the alleged functional limitation, and

"(2) That the alleged functional limitation is not in fact functional but a true process limitation."

Elsewhere the brief for appellant dissects step 2 of claims 3 and 6 as follows:

"(a) reacting the nitrile-containing product with sulfur

"(b) at a temperature not substantially less than 190° C. but below the decomposition temperature of the sulfurized nitriles

"(c) *for a time sufficient to produce a substantially homogeneous product*

"(d) *but insufficient to cause the formation of a substantial proportion of oil-insoluble reaction products.*" (Italics quoted.)

It is then argued, in substance, that the board erroneously assumed that the novelty of appellant's process is dependent on limitations (c) and (d); that the claims would have defined broadly a novel and patentable invention if applicant had specified only limitations (a) and (b), omitting (c) and (d) entirely; and that even if it be assumed that limitations (c) and (d) constitute in fact a functional statement, it is well settled that a functional statement in a claim is permissible if the novelty of the claim is not dependent thereon.

The foregoing is followed, however, by argument, in which it is quite earnestly insisted that the limitations defined in (c) and (d) do not constitute a functional state-ment. Before discussing this contention, we take occasion to say that it is difficult to reconcile the present insistence that appellant has an invention independent of the last clause of claims 3 and 6, relating to the time of reaction, with the clear teaching of the specification relative to the time factor.

It is also proper to say that, assuming without holding that appellant would have had a patentable claim if he had omitted the time factor entirely and recited simply the temperature factor, there is nothing in the record to indicate that any such thing was in his thought at any time during the prosecution of the case in the Patent Office.

No such limited patent was contemplated by him, so far as the record discloses. He has contemplated, and before us continues to seek, a patent for a complete process involving both temperature and time, and, as hereinbefore has been pointed out, his specification states that the step of sulfurizing the nitriles described in his first step involves "two critical, *interrelated* factors * * * namely the reaction temper— [meaning temperature] and the time of reaction." (Italics supplied.)

The claims seemingly may be likened to the Siamese twins whose bodies were connected by a cord of flesh through which flowed a blood current essential to the life of both bodies. They were so interrelated physically that sundering of the cord, it was believed, would result in death to both.

We have considered the question of functionality in the light of appellant's argument that they are not functional and in the light of authorities cited. It is noted that in the rejection indefiniteness and functionality were coupled together by the tribunals of the Patent Office, and that is true in a number of the decisions cited. Appellant presents no argument on the question of indefiniteness separate from what is said on the question of functionality.

The statute, R.S. § 4888, 35 U.S.C. § 33, 35 U.S.C.A. § 33, provides, so far as here pertinent, that an applicant for a patent shall file in the Patent Office a written description of his claimed invention "and of the manner and process of making, con-

structing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; * ˙ * * ". It also provides that an applicant "shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."

 It may be conceded that appellant has met the last requirement so far as his specification goes, but only that far, and it does not seem to us that a person skilled in the art or science to which appellant's alleged invention appertains is taught how to make, construct, compound, and use appellant's process by what may be designated as the time reaction provision of appellant's claims reading (we repeat it here for convenience and emphasis): "for a time sufficient to produce a substantially homogeneous product but insufficient to cause the formation of a substantial proportion of oil-insoluble reaction products," nor do we believe that the specification aids appellant upon the question of definiteness. It is true, of course, that where the validity of a claim which has been granted is questioned, (and in some other classes of cases) it frequently becomes proper to interpret the claim by looking to the specification, but where one seeks a patent, the statute very definitely requires that he shall particularly point out and distinctly claim that which he claims to be his invention or discovery. No citation of authority is necessary in support of the familiar rule that the claim is the measure of the invention. Furthermore, in the instant case, appellant's specification, in our opinion is no more definite in its teaching to those skilled in the art than are the claims themselves. The decision of the United States Court of Appeals for the District of Columbia in the case of Raytheon Manufacturing Company v. Coe, 68 App.D.C. 255, 96 F.2d 527, cited by appellant, is not deemed apposite here.

So far as the time of reaction is concerned, it seems to us that all that appellant's specification teaches those skilled in the art is to experiment and find out for themselves how much time will be required where different amounts, or proportions, of nitriles and sulfur are used. The board, in its decision on a petition for reconsideration of its original decision, said:

"It is appellant's position that since the 'description does not disclose what the minimum and maximum time ranges would be' he is at liberty to recite a critical feature of his invention by a statement of result rather than by a result that is dependent on a step. Reference to page 6, lines 7 to 14 of the description teaches that the time of reaction is dependent on the proportion of sulfur used and that the lower the amount of sulfur and the higher the temperature a shorter time is required. At 190°-200° C. the reaction is desirably 'not over about 15 minutes' but it is significant that no proportions of sulfur and nitriles are here disclosed. Presumably, the table on page 12 of the description is intended to supply the proportions but it is to be noted that 25 parts of sulfur were reacted with 75 parts of nitriles at a temperature between 190° to 200° C. and that there is nothing in said table to show the varying times and proportions referred to on page 6, lines 7 to 14, whereby shorter or longer lines of reaction are obtained.

"The table on page 12 of the description shows that with 5 minutes at 190° to 200° C. a trace of insoluble material is found and that with 35 minutes of reaction a small amount of insoluble material is formed, which is found to precipitate after six days when blended with a lubricating oil. Appellant concludes that less than 35 minutes must be used for the reaction time. How much less, does not appear. At page 6, lines 7 to 14, it is stated that 'not over about 15 minutes' was the reaction time for an unspecified amount of sulfur and nitriles at 190° to 200° C.

"In view of the above we do not see how we can arrive at any other conclusion than we have. That the time factor is closely related to other factors such as proportions and temperatures, is all too clear. The appealed claims recite only a temperature recitation that is even broader than the 190° to 200° C. range of the description. The

570

proportions of reactants are omitted from the claims and they are shown to be important and critical by the disclosure.

In a decision of January 6, 1945, the examiner said, inter alia: " * * * It is not clear what is meant by the language 'for a time insufficient to cause formation of a substantial proportion of oil insoluble reaction products' since five or ninety-five percent may be a substantial proportion. What precisely is a substantial proportion? * * *"

Thereafter appellant proposed certain amendments which were entered for purposes of appeal, but none of them related to the matter so discussed by the examiner. In his brief before us there is argument to the effect that use of "substantial" is extremely common in patent claims and decisions are cited in which the term has been held to be permissible. For example, this court, in the case of In re Hutchison, 104 F.2d 829, 832, 26 C.C.P.A., Patents, 1370, page 1374, said: "It is realized that 'substantial distance' is a relative and somewhat indefinite term, or phrase, but terms and phrases of this character are not uncommon in patents in cases where, according to the art involved, the meaning can be determined with reasonable clearness."

The difficulty involved in attempting to uphold "substantial proportion" as being sufficiently definite here, as we view it, is that its meaning cannot be determined with reasonable clearness according to the art involved.

Appellant's own brief before us seems to us to show the indefinite character of the language covering the time reaction phase. The brief says:

"For any given combination of conditions, there is a limited time range for obtaining the particular type of product which appellant desired. *But with different combinations of conditions each of these time ranges would be subject to considerable variation.* (Italics supplied.) For example, the variables upon which the time range would depend would include the following:

"(1) *Type of nitriles* being sulfurized— For example, talloil nitriles require shorter reaction times than stearic nitrile or oleic nitrile. (Italics quoted.)

"(2) *Temperature of reaction*—This has a very great effect on the rate of reaction and on the rate of formation of oil-insoluble products. The time limits would be different at a temperature of 190° C. than at a temperature of (say) 250° C. (Italics quoted.)

"(3) *Amount of sulfur used*—For example, the time required for 30% sulfur to go into solution or react would be longer than required for 15% sulfur. (Italics quoted.)

"(4) *Degree of agitation* of the reaction mixture—The agitation affects the rate of sulfurization by affecting the degree of contact between the sulfur and nitrile phases. (Italics quoted.)"

It may be that appellant's process is extremely difficult of adequate description, but under the authorities that may not be taken into account by the courts. In the case of General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 372, 58 S.Ct. 899, 903, 82 L.Ed. 1402, the Supreme Court of the United States said: "The Circuit Court of Appeals below suggested that 'In view of the difficulty, if not impossibility, of describing adequately a number of microscopic and heterogeneous shapes of crystals, it may be that Pacz made the best disclosure possible * * *.' Page 905 of 91 F.2d. But Congress requires, for the protection of the public, that the inventor set out a definite limitation of his patent; that condition must be satisfied before the monopoly is granted. The difficulty of making adequate description may have some bearing on the sufficiency of the description attempted, but it cannot justify a claim describing nothing new except perhaps in functional terms. It may be doubted whether one who discovers or invents a product he knows to be new will ever find it impossible to describe some aspect of its novelty."

In a footnote the court stated that different considerations might apply in cases involving plant patents because of the provision appearing in 35 U.S.C. § 33, 35 U.S.C.A. § 33, R.S. § 4888, reading: "No plant patent shall be declared invalid on the ground of noncompliance with this section if the description is made as complete as is

reasonably possible", but whatever the proper construction of that particular language may be it seems to apply only to plant patents. It obviously was not considered by the Supreme Court to have any bearing in the case then being decided, between which and the instant case, we are of opinion, there is a strong analogy. The particular claim of the General Electric Co. case, supra, quoted by the court as typical read: "25. A filament for electric incandescent lamps or other devices, composed substantially of tungsten and made up mainly of a number of comparatively large grains of such size and contour as to prevent substantial sagging and offsetting during a normal or commercially useful life for such a lamp or other device."

The claim was held to be invalid on its face by the Supreme Court because it failed "to make a disclosure sufficiently definite to satisfy the requirements of R.S. § 4888, 35 U.S.C. § 33, 35 U.S.C.A. § 33." The claim was held to be functional and indefinite. It seems to us that the claims here involved are equally so. See also Standard Brands, Inc., v. National Grain Yeast Corp., 308 U.S. 34, 60 S.Ct. 27, 29, 84 L.Ed. 17, in which the Supreme Court held process claims relating to yeast invalid, because of vagueness and indefiniteness, saying: "* * * Both the times and manner in which the concentrated nutrient solution is to be added may be ascertained as we have stated solely by experimentation."

Other decisions deemed directly in point are found in the cases of In re Caunt, 81 F.2d 405, 23 C.C.P.A., Patents, 855; and In re Duggan et al., 124 F.2d 215, 29 C.C.P.A., Patents, 765. Counsel for appellant seem to have overlooked or disregarded the really pertinent holdings in those cases. At least, they omitted to quote them while quoting other parts not so pertinent.

See also the cases of In re Sussman, 141 F.2d 267, 31 C.C.P.A., Patents, 921; Koebel v. Coe, 70 App.D.C. 261, 105 F.2d 784, 41 USPQ 759; and In re Frey et al., 166 F.2d 572, 35 C.C.P.A., Patents, 970.

Appellant seems to be under the impression that the board was influenced to some extent in its decision by the fact that only one specific example of appellant's claimed process was given in his specification, and his brief presents argument, with citation of authorities, to support the contention that only one embodiment of an invention need be described.

We do not so understand the board's decision. What we understand the decision to mean is, in the final analysis, that the single example itself was lacking in definiteness as to reaction time, and, in effect, that it was conceded by appellant that considerable experimentation, on the part of one seeking to carry out the process, would be required to determine time limits. We are of opinion that this is the correct view, and hence the rule laid down by the Supreme Court in the cases of General Electric Co. v. Wabash Appliance Corp., supra, and Standard Brands, Inc., v. National Grain Yeast Corp., supra, applies.

We are not convinced of error in the decisions below, and the decision of the board is affirmed.

Affirmed.