44 C.C.P.A.(Patents)
**Application of Bernard M. Fine, Deceased, Amelia S. FINE, Assignee.**
**Patent Appeal No. 6219.**

United States Court of Customs
and Patent Appeals.
Jan. 9, 1957.

Busser & Harding, Philadelphia, Pa. (Frank S. Busser, Philadelphia, Pa., and William A. Smith, Jr., Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Arthur H. Behrens, Washington, D. C., of counsel), for Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Judges.

RICH, Judge.

This is an appeal of Amelia S. Fine, assignee of Bernard M. Fine, deceased, from the decision of the Patent Office Board of Appeals affirming the rejection by the examiner of claim 6, the sole remaining claim, in application serial No. 25,353, filed May 6, 1948, by Bernard M. Fine, entitled, "Process of Making Crank Shafts."

The claim under rejection reads:

"The process of making crankshafts which comprises forming a work-piece composed of collars spaced apart by axially extending journal members coincident with the axis of the work-piece, clamping the work-piece between the first and second, between the second and third, and between the third and fourth, of a succession of collars to hold the members between the first and second, and between the third and fourth, of said collars from radial displacement and to hold all said collars and the members between them from axial displacement, subjecting the journal member between the second and third collars and also the second and third collars to radial pressure in one direction and *simultaneously applying coacting radial pressures at right angles to said direction to the peripheries of the second and third collars,* the first named radial pressure displacing the metal of the journal member between the second and third collars outward from the axis of the work-piece to form web-connecting pins and at the same time displacing the metal of the second and third collars outward from the axis of the work-piece to elongate such collars into webs, and the *second named radial pressure simultaneously compressing inward toward the axis the metal of the second and third web-forming collars to thus supply the metal required to allow their displacement and elongation in said first-named direction and their reshapement into oblong form without reduction in thickness;* thereby simultaneously reshaping the last-named two collars and their connecting journal member to form webs and a connecting pin." (Emphasis ours.)

The disclosure of the Fine application may be summarized briefly as follows: The invention is concerned with the making of crankshafts, particularly large ones. Such crankshafts are made from cast ingots which have a central longitudinal core of weaker metal than the remainder, which zone of weakness remains even after forging. The applicant devised a method of forming crankshafts from such ingots involving displacement of the metal in such fashion that crankpins and connecting webs are formed without exposing the weaker core. In other words, in the finished crankshaft this weaker core metal extends through the axis of the journals, along the longitudinal centers of the connecting webs and the axes of the crankpins. This avoids the production of conditions favorable to rupture of the crankshaft in use. To produce this result,

applicant forges a cylinder from the ingot which is then machined to form along its length a series of spaced collars, so called. These collars are circular discs which remain after the cylinder has been turned down in the spaces between the collars to the diameters of the shaft journals and crankpins. The novelty of the process resides in the steps of forming a crank, reformed from two adjacent collars, which become webs, and the shaft section between them which becomes a crankpin. This crank formation is done on the hot workpiece by pressure, preferably hydraulic, while it is held in a suitable press bed, shaped to hold it against movement except for the two adjacent collars and the intermediate shaft section which are reshaped into a crank. While so held, the intermediate shaft section is moved radially, which stretches the collars to form webs, and simultaneously the stretched collars or webs are compressed "radially" inward, at right angles to the stretching pressure, "to thus supply the metal required to allow their displacement and elongation * * * and their reshapement * * * without reduction in thickness." The last quoted words are from the claim.

The references relied on are: Jakowitsch (German), 307,880, Sept. 14, 1918; Meley, 2,534,613, Dec. 19, 1950 (filed June 19, 1945).

The view we take of the case makes it unnecessary to discuss the references because, as will presently appear, the issue before us concerns only the adequacy of the claim.

In its opinion the Board of Appeals said:

> " * * * It is true that neither Jakowitsch nor Meley discloses appellant's concept of reshaping the collars into oblong form to form the webs without reducing their thickness. However, * * * we do not find this concept set forth either as a positive method step or as a necessary result of the steps now included in the claim."

The board regarded the claim as setting forth only two positive method steps: (1) the clamping and holding step as recited and (2) the simultaneous application of radial pressures in directions at right angles to each other, to stretch and compress the collars. All of that part of the claim which follows the first passage we have italicized the board said "merely sets forth a desired mode of operation and result which appellant hopes to obtain from the previously mentioned steps." Holding this view, the board denied the claim as failing to distinguish from the references, a proper conclusion if the board's premises were correct. However, we disagree with the premises.

Reading the claim as a whole, we are of the opinion that the second portion we have italicized is a clear modification of the first and should be read with it, thus becoming a part of what is admittedly a positively recited method step. We agree with appellant's position that the second italicized clause sets forth definite operational limitations on the process. So read, we feel that the claim particularly points out and distinctly claims the applicant's invention as required by the statute, 35 U.S.C. § 112. Admittedly the prior art of record does not show the reshaping of collars to form webs, without reducing their thickness, by peripheral pressure applied to them.

The board appears to have been of the view, as indicated by its opinion on rehearing, that to take the latter portion of the claim out of the category of a mere expression of desires and hopes it would be necessary to set forth "as a positive part of the method" something concerning the amount of material displaced, the volumetric capacity of the web-shaping die and the proper coordination of these factors with the extent of the radial pressures which are applied at right angles to each other. Viewing the matter realistically, this seems to be asking the impossible, or at least the impracticable. These factors would necessarily differ with variables such as change in size or shape of the crank-

shaft, or indeed of any of its parts subjected to reshaping in the process, the composition of the steel and the temperature of the workpiece.

When the above italicized portions of the claim are combined, they define the step of compressing the webs, which distinguishes the invention from the prior art, in the following language:

" * * * simultaneously applying coacting radial pressures at right angles to said direction [the direction of crank pin displacement] to the peripheries of the second and third collars, * * * compressing inward toward the axis the metal of the second and third * * * collars to thus supply the metal required to allow their displacement and elongation * * * and their reshapement into oblong form without reduction in thickness; * * *."

This calls for applying *enough* peripheral pressure to the collars as they are stretched into webs (a) to reshape them into oblong form and (b) to prevent reduction of their thickness. In a sense this is "functional" language and no doubt the basis for the board's characterization of it as an expression of desires and hopes. It is also a *limitation* on the positively recited process step of applying the "second named radial pressure," which must be done with enough pressure to prevent reduction in thickness. This is but one step in a process which is a combination of steps. Considering the possible variables adverted to above, we do not see how applicant could have defined this step with greater particularity and still protect the invention. Pressure must be varied to suit the existing conditions so as to get the affects specified in the claim and all one has to do to meet this step, or to avoid it, is to increase or decrease pressure and observe what happens. We do not agree that this would require ingenuity or imagination, as suggested in the brief for the Commissioner. In re Duggan, 124 F.2d 215, 29 C.C.P.A. Patents 765, cited therein, is distinguishable from the case at bar on its facts. There the method related to preshrinking fabric and results depended on a certain range of concentration of chemicals and definite times and temperatures. All of these factors were critical. The claims refused left all of them undefined except in terms of the result desired. This court therefore held that they did not mark the limits of the invention, were too vague and indefinite and did not comply with the statute. That is not the situation here. Only one step in a combination of steps must be adjusted as to the degree of pressure in a routine fashion to produce a defined result which can be determined by simple measurement. We do not regard this as undue functionality.

We do not find in the claim either the uncertainty or the undue scope which are the usual bases for condemning so-called functional expressions. We think no one would have difficulty in fixing quite precise limits to the process defined in claim 6.

At the oral argument before us a question was raised as to the possible application to the issue of 35 U.S.C. § 112, third paragraph, which concerns functional claims and memoranda thereon were submitted. We do not deem it necessary to consider this point in view of the foregoing.

The decision of the Board of Appeals is reversed.

Reversed.

JACKSON, Judge, retired, recalled to participate herein in place of COLE, Judge, absent because of illness.

O'CONNELL, Judge, was present at the argument of this case but, because of illness, did not participate in the decision.