45 C.C.P.A. (Patents).

## Application of Hyman A. MICHLIN.

### Patent Appeal No. 6373.

United States Court of Customs
and Patent Appeals.
June 24, 1958.

Hyman A. Michlin, pro se.

Clarence W. Moore, Washington, D. C. (David Kreider, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, and RICH, Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the final rejection by the Primary Examiner of claims 94, 95, and 97 to 100, inclusive, of appellant's application for a patent on a method of and apparatus for producing luminescent images. No claims were allowed.

While the notice of appeal also alleged error in the board's decision affirming the examiner's rejection of claim 96, that claim is not included in the record and is not mentioned in the statement of errors relied on in appellant's brief. Accordingly, the appeal as to claim 96 is regarded as having been withdrawn.

Claims 94, 97, and 99 are representative of the appealed claims and read:

"94. The method for producing a luminescent image on a luminescent layer by a configuration of electric energies comprising the steps

of irradiating the luminescent layer with luminescent excitation energy in radiant energy to store luminescent excitation energy therein; impacting electron energies on one side of the luminescent layer to impress the configuration of electric energies in potentials thereon, and applying an electric energy in a different potential to the opposite side of said one side of the luminescent layer to effect sufficient potential differences therebetween so as to effect a configuration of lines of electric forces through the luminescent layer, in accordance with the potentials of the impressed configuration of electric energies on one side and the potential of electric energy on the other side of the luminescent layer, to substantially effect a transmission of the configuration of electric energies through the luminescent layer to effect a luminescent image the light values of which are in image of said substantially transmitted configuration of electric energies.

"97. In combination, a vacuum tube having means for impacting a target with an image in electron energies with the target comprising a first means for converting the impacting electron energies into a configuration of electric energies in potentials in image thereof and transmitting the configuration of electric energies in potentials therethrough; and a second means, suitably positioned from the first means, for applying electric energy in a potential effect potential differences to the first means; and a layer of phosphors interposed between the first and second means for transmitting the configuration of electric energies therethrough so that on impressing electric energies in sufficient differences in potentials on the first and second means there is effected potential differences sufficient to transmit the configuration of electric energies through the layer of phosphors to produce a luminescent image thereon

in image of the transmitted configuration of electric energies.

"99. In a vacuum tube having means for impacting a raster of electron energies on a target with said target consisting entirely of a layer means for converting the impacting electron energies into a configuration of electric energies and transmitting said configuration of electric energies therethrough; a conductance layer; a means for transmitting electric energy in a potential betwen the conductance layer and the outside of the vacuum tube; and a layer of phosphors interposed between said layers to transmit the configuration of electric energies therebetween."

The sole reference relied on is the patent to

Ferrant 2,239.887 April 29, 1941.

While the examiner rejected the appealed claims on several grounds, his decision was affirmed by the board only so far as it was based on the Ferrant patent. Accordingly, no other ground of rejection will be considered here.

■ Appellant's application relates to television methods and apparatus of the kind in which an image is produced by impacting on a target a scanning electron beam which is modified in response to the image being received. As disclosed, a two-sided flat target is employed which is impacted on one side by the beam. Adjacent the other side of the target is a layer of electro-luminescent phosphors, and on the opposite side of the phosphor layer is a "conductance" layer. The latter layer has impressed on it an electrical potential differing from that of the target, so that there will be a flow of electricity between the target and conductance, through the phosphor layer, causing the phosphors to luminesce. The phosphors are also subjected, between scans, to short wave length rays from a luminescent excitation energy source.

The Ferrant patent discloses an apparatus in which a luminescent screen

is scanned by a moving beam. The screen comprises front and rear conductive layers separated by a layer of phosphors. The front layer, which is impacted by the beam, is divided into a number of parts, each provided with a so-called Faraday cage or collector, and each portion is connected to a source of electrical potential different from that of the rear conductive layer. The phosphors are subjected, between scans, to a uniform source of light of proper wave length to irradiate them in the desired manner.

Ferrant explains that it has been discovered that phosphors, "when placed within an electric field during excitation, are caused to flash up as soon as the electric field is removed." Accordingly, he describes and claims an arrangement in which the electric charge is abruptly reduced at desired times during the scanning to produce luminescence.

From the foregoing, it is seen that appellant relies on the existence of a potential difference between opposite sides of the phosphor layer to produce luminescence, while Ferrant relies on the interruption of such a potential difference to produce the same result. It seems evident, therefore, that the two devices operate on different principles, and appellant's has the advantage of greater simplicity. It does not appear that Ferrant's teaching that an interruption of the charge across the phosphors would cause luminescence would suggest that the same result could be obtained by maintaining the charge. Under such circumstances, we are of the opinion that there are unobvious differences between the disclosures of appellant and Ferrant, even though, as pointed out by the board, appellant has not shown by comparative tests that he obtains results superior to those of Ferrant. Invention may reside in the use of a simpler method or apparatus to obtain results similar to those previously obtainable by a more complex one. Chesapeake & O. Ry. Co. v. Kaltenbach, 4 Cir., 95 F.2d 201.

It remains to be determined, however, whether the claims define the differences in procedure and apparatus which bring about the results above mentioned. The board and the examiner were of the opinion the claims are readable on the Ferrant disclosure except, possibly, for statements of function or result which can be given no patentable significance.

Claims 94 and 95 are method claims, each of which includes the step of applying electric energy of different potentials to opposite sides of the luminescent layer, such potentials being defined in claim 94 as being sufficient "to effect a configuration of lines of electric forces through the luminescent layer * * * to substantially effect a transmission of the configuration of electric energy through the luminescent layer to effect a luminescent image." The examiner considered the quoted language to be indefinite and functional, but the board was of the opinion that sufficient manipulative steps are set forth to effect the function. Presumably, therefore, the board was of the opinion that the adjustment of the potentials to produce the claimed result was a routine matter. In re Fine, 240 F.2d 354, 44 C.C.P.A., Patents, 746.

In our opinion the Ferrant patent does not disclose the application of different potentials in such a manner as to produce the results specified in claim 94. It is not the application, but the removal of the potentials in Ferrant which produces the desired luminescence. It is, of course, true that the potentials must be applied before they can be removed, but the only reasonable interpretation of claim 94 is that it is the presence of the potential difference which produces the specified result, and that is not the case in the Ferrant system. We therefore conclude that claim 94 defines a method which involves inventive differences over what is disclosed by Ferrant.

Claim 95 is similar to claim 94 and is regarded as patentable over the reference for reasons similar to those just given.

Claims 97 to 100, inclusive, are drawn to apparatus. Claim 97 recites a vacuum tube having (1) a means for impacting a target with an image in electron ener-

gies, (2) a target comprising means for converting such energies into a potential image and transmitting it therethrough, (3) a second means spaced from the first and having a potential difference therefrom, and (4) a layer of phosphors between the first and second means. We agree with the examiner and the board that Ferrant fairly discloses each of the above means, as recited in claim 97. It is true, as pointed out by appellant, that there are specific differences between his structure and that of Ferrant, but those differences are not set forth in claim 97. As described by Ferrant, his apparatus produces a potential image on the target which is transmitted through the target to the phosphors, thus satisfying the broad language of claim 97.

■■ After recitation of the elements above referred to, claim 97 concludes with a functional statement beginning with "so that," and setting forth certain features of the manner in which the device operates. It is well settled that patentability of apparatus claims must depend upon structural limitations and not upon statements of function. In re Stattmann, 146 F.2d 290, 32 C.C.P.A., Patents, 813, and In re Gregg, 244 F.2d 316, 44 C.C.P.A., Patents, 904. While 35 U.S.C. § 112 now provides that an element of a combination may be defined as a means for performing a specified function, it does not contemplate the allowance of a combination claim solely on the basis of a final functional statement of the kind included in claim 97. In re Arbeit, 206 F.2d 947, 41 C.C.P.A., Patents, 719; In re Piazze, 230 F.2d 426, 43 C.C.P.A., Patents, 812; and In re Mason, 244 F.2d 733, 44 C.C.P.A., Patents, 937.

The final functional statement of claim 97 is, in effect, a method limitation, suggesting that the apparatus may be operated in substantially the manner set forth in claims 94 and 95. The inventive concept defined in such operation is a method, rather than an apparatus, and will be protected by the allowance of claims 94 and 95.

Claim 98 is similar to claim 97, so far as the issues here are concerned, and we hold that it was properly rejected on the same grounds as claim 97.

Claim 99 is generally similar to claims 97 and 98, with the omission of the final functional statement. The target is referred to in claim 99 as "consisting entirely of a layer means" for converting and transmitting a configuration of electron energies. That language, in our opinion, does not distinguish from what is shown by Ferrant, whose "Faraday cages" form a layer means within the meaning of claim 99. While Ferrant requires an external potential source and shows connections between such a source and his "layer means," appellant's device also requires, for proper operation, a potential difference between that means and the "conductance layer" recited in claim 99. It does not appear that the target could, in either case, perform the stated function unless it were associated with other elements. Accordingly, the statement that the target consists entirely of a layer means does not present a patentable distinction over Ferrant.

The foregoing remarks are generally applicable to claim 100, which is dependent on claim 99, and calls for an apparatus "consisting entirely" of the tube of claim 99 and a means for irradiating the phosphor layer with luminescent excitation energy in radiant energy. Ferrant's means for irradiating his phosphors with light of proper wave length correspond to the latter means.

■ The statement that the apparatus consists entirely of specified elements is essentially a negative limitation which, in the combination claimed, does not define anything inventive over what is shown by Ferrant. The reference shows all the elements recited by claim 100, and the fact that it may also show additional elements for performing additional functions is of no patentable consequence. Appellant's invention over Ferrant does not reside in a mere omission of elements, but in a particular arrangement and/or method of using the elements which re-

main. The apparatus claims, in our opinion, do not sufficiently define the inventive features and we agree with the Patent Office tribunals that they present nothing patentable over Ferrant.

The decision of the board is modified, being reversed as to claims 94 and 95 and affirmed as to claims 97 to 100, inclusive.

Modified.